FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

2014 FEB 18 ⊃ 2: 42

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

|  |  |  |
|---|---|---|
| **AUDIO-VIDEO GROUP, LLC** | : | |
| 8415 Progress Drive, Suite G | : | |
| Frederick, Maryland  21701-4762 | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | Civil Action No. _1:14 CV 169_ |
| | : | _JCC / TCB_ |
| **CHRISTOPHER L. GREEN** | : | |
| 13388 Point Rider Lane | : | |
| Herndon, Virginia  20171 | : | |
| | : | |
| **Defendant.** | : | |

## COMPLAINT FOR INJUNCTIVE AND LEGAL RELIEF

Plaintiff Audio-Video Group, LLC, by and through undersigned counsel, brings this

Complaint for Injunctive and Legal Relief against defendant Christopher L. Green on the

grounds and in the amounts set forth herein.

## PARTIES

1.     Plaintiff Audio-Video Group, LLC ("AVG" or the "Company") is a Maryland

limited liability company with its principal place of business in Frederick, Maryland.  All of the

membership interests of AVG are owned by Eric J. Johnson ("Mr. Johnson"), a citizen of the

state of Maryland.

2.     Plaintiff AVG is an audiovisual systems integrator, founded in 2000 by Mr.

Johnson, which offers audiovisual design and installation services, equipment rental and

purchase, training and seminars and preventive maintenance and on-call support to customers in

Maryland, Northern Virginia, Washington, D.C., Southern Pennsylvania and West Virginia.

3.     Plaintiff AVG services customers in the religious, corporate, retail, educational, hospitality and governmental sectors of the economy.

4.     Defendant Christopher L. Green ("Green") is an individual who is a citizen of the Commonwealth of Virginia residing at 13388 Point Rider Lane, Herndon, Virginia.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction of this action under Article III, § 2 of the United States Constitution and 28 U.S.C. § 1332.

6.     The matter in controversy exceeds, exclusive of interest and costs, the sum of Seventy-five Thousand Dollars ($75,000) and is between citizens of different States.

7.     Venue in this judicial district and in this division is appropriate pursuant to 28 U.S.C. § 1391 as to Counts I, II, IV, V, VI and VII because it is the judicial district in which the defendant resides and a substantial part of the events giving rise to the claim occurred in this judicial district and division.

8.     Venue is also proper as to Count III in the United States District Court for the District of Maryland because Green consented to such venue in the Confidentiality Agreement for "any dispute arising out of this Agreement."  However, since the allegations of other counts of the Complaint predominate, do not arise out of the Confidentiality Agreement and defendant Green is a citizen of Virginia, plaintiff AVG has brought this action in this judicial district and division.

2

## FACTS COMMON TO ALL COUNTS

### Defendant Green's Employment as an AVG Sales Engineer

9.      Defendant Green was employed by AVG as a sales engineer from June 2006 until January 6, 2014. In this capacity, Green was responsible for selling to prospective and actual buyers seeking audio and video solutions.

10.     Defendant Green primarily performed his services to AVG out of his Northern Virginia home. He came into AVG's Frederick, Maryland offices a minimum of one time per month for on-site sales meetings. Defendant Green was provided with a Company-owned laptop computer for use in the performance of his duties.

11.     Defendant Green was compensated by plaintiff AVG with a base salary and an opportunity to earn a commission bonus based upon the achievement of certain sales for which he was responsible. During most years of his employment with AVG, Green earned such a commission-based bonus.

12.     In the course of his employment with AVG, defendant Green gained valuable non-public information regarding AVG's business and customers. Defendant Green became well-acquainted with, among other things, AVG's models and methods for pricing, its specifications, business means, marketing plans, financial cost structure and related information, all of which are highly confidential.

### Confidentiality Agreement between AVG and Green

13.     At or around the time that defendant Green was hired by plaintiff AVG, Green entered into a confidentiality agreement with AVG (the "Confidentiality Agreement"), a true and correct copy of which is attached as **Exhibit A**. The Confidentiality Agreement was made effective June 14, 2006.

3

14.     Confidential Information was defined in the Confidentiality Agreement to include the following: "all data, materials, products, technology, computer programs, specifications, manuals, business plans, software, marketing plans, financial information, and other information disclosed or submitted, orally, in writing, or by any other media, to Recipient by Owner."

15.     In the Confidentiality Agreement defendant Green expressly agreed that Confidential Information was to be held in confidence and not used for purposes other than its business with AVG.

16.     Under the terms of the Confidentiality Agreement, defendant Green's obligations with respect to AVG's Confidential Information are effective for a period of ten years from the date that AVG last disclosed any Confidential Information to Green and therefore remain in full force and effect.

17.     The Confidentiality Agreement permits plaintiff AVG to obtain, in addition to any other legal remedies which may be available to it, such equitable relief as may be necessary to protect AVG against any breach or threatened breach.

18.     Defendant Green acknowledged in the Confidentiality Agreement that he would be "responsible to pay all reasonable attorneys' fees, costs and expenses incurred by [AVG] with respect to any breach, threatened breach or litigation in enforcing the Confidentiality Agreement."

<u>AVG's Employee Manual</u>

19.     All employees of AVG are provided with a copy of the Company's Employee Manual, a true and correct copy of which is attached as **Exhibit B**.

20.     The Employee Manual sets forth AVG's rules and standards of conduct, including that all employment and compensation with AVG is at will.

4

21.     The Employee Manual sets forth a list of unacceptable activities that could result in immediate dismissal, including "[v]iolating the non-disclosure or confidentiality agreement; giving confidential or proprietary Company information to competitors or to unauthorized Company employees; working for a competing business while an employee of the Company . . ." Employee Manual § 7(B)(1)(c), and "[u]sing Company equipment, material, time, or information for unauthorized purposes or personal use." Id. at §7(B)(1)(e).

22.     The Employee Manual also addresses conflict of interest/moonlighting as follows:

1.  The primary guideline in this area is one of full disclosure.  If an employee is holding a second job, it is the responsibility of the employee to inform his/her supervisor.  Failure to inform the supervisor may result in disciplinary action up to and including suspension and/or termination.
2.  Moonlighting for direct competitors or for customers receiving services from the Company is prohibited while employed by Audio-Video Group.
3.  Performing work for a second job during Audio-Video Group works hours is prohibited.
4.  Using Company equipment in a second job is prohibited.

Id. §7(K).

23.     The Employee Manual also addresses the use of Company computers, indicating that AVG "provides computers with Internet access to all employees" and that "the company shall have full access to any computer's content at any time at its sole discretion and has the right to review, delete, or otherwise alter computer content." Id. §7(N).

Termination of Green's Employment and Discovery of Unauthorized Competition

24.     On January 6, 2014 following Green's poor financial performance for calendar year 2013, AVG terminated Green's employment.

25.     Following plaintiff's termination of defendant Green's employment, AVG required Green to leave his Company-provided laptop computer at AVG's offices.

26.     This Company-provided laptop computer was subsequently accessed by AVG and numerous invoices for audio video services performed directly by Green himself, or indirectly through competitors of AVG, to actual or potential customers of AVG were found.

27.     The invoices on the AVG-provided laptop were for dates throughout his employment, and upon information and belief, defendant Green had provided audio video services to the customers to whom such invoices were addressed.  Based upon the invoices located on his AVG-issued laptop computer, defendant Green invoiced customers for audio video services and equipment in a total in excess of $260,000.

28.     These invoices located on the AVG-provided laptop also evidence that defendant Green provided services to competitors and customers during AVG work hours.  By way of example, one of these invoices show that defendant Green provided four hours of event operation services per day on each of May 10, 11, 12 and 13, 2011 to a school customer who was invoiced for such services on May 25, 2011.  Another invoice shows that defendant Green provided audio/video system operation for religious services on the weekdays of September 28 and 29, 2011.  The Company's employment file for defendant Green for 2011 does not list any of these dates as days in which defendant Green requested time off.

29.     Also found on defendant Green's AVG-provided laptop was at least one business solicitation by defendant Green whereby he would provide services to the potential customer and the solicitation format used was the same one developed and used by AVG except that AVG's name was replaced with defendant Green's name.

30.     While employed by AVG defendant Green's business cards listed his cellular phone and, upon information and belief, Green continues to use such cellular phone number in his separate business.

87816.001

31.     Defendant Green's familiarity with AVG's customers and pricing models and methods, as well as his knowledge of the prices charged to particular customers, would give him an unfair advantage in any direct competition with AVG.

32.     At the time that defendant Green's employment with AVG was terminated, defendant Green was purportedly quoting or in the process of quoting approximately twenty-nine (29) separate projects to existing or potential customers of AVG.

33.     While defendant Green returned to AVG certain items, including his Company-provided laptop and certain file folders, only six folders relating to the in-process projects were returned to AVG.  Upon information and belief, defendant Green has kept and not returned folders for approximately 23 of the 29 quoted projects.

34.     Upon information and belief, defendant Green has contacted at least one of the customers with in-process quotes after his employment with AVG was terminated.

35.     According to defendant Green's LinkedIn profile, defendant Green is now employed as of February 2014 as a Sales Engineer in the Northern Virginia office of AV/COM Integrators, Inc., a competitor of AVG's headquartered in Severn, Maryland.

## COUNT I
### (Breach of Duty of Loyalty)

36.     Plaintiff AVG repeats and realleges the allegations of paragraphs 1 through 35 as if fully restated herein.

37.     As an employee of AVG and by virtue of his access to AVG's confidential and sensitive information and trade secrets, defendant Green owed a duty of loyalty to plaintiff AVG.

38.     Defendant Green breached his duty of loyalty to AVG by soliciting AVG's customers during his employment, and misappropriating AVG property to do so, and by secretly performing services and providing products to AVG's customers for his personal financial gain.

39.    Plaintiff AVG suffered damages, and continues to suffer damages, as a result of defendant Green's breach of his duty of loyalty, including but not limited to lost profits and loss of good will.

## COUNT II
### (Tortious Interference with Business Relationships)

40.  Plaintiff AVG repeats and realleges the allegations of paragraphs 1 through 35 as if fully restated herein.

41.    Plaintiff AVG had business relationships with its customers and a reasonable business expectancy of continuing such business relationships.  AVG also had a reasonable business expectancy that defendant Green would not attempt to divert audio visual customers from AVG either during or immediately following the termination of his employment.  These expectations arose from the terms of the Confidentiality Agreement and from his duty of loyalty to AVG.

42.    Defendant Green was aware of the relationships that AVG had with its customers.

43.    Despite such knowledge, defendant Green intentionally, maliciously, and improperly interfered with this business expectancy by personally soliciting such customers to cease its business with AVG and to have the same or similar services be provided directly by defendant Green for his own financial gain, and doing so through the misappropriation of AVG's property.

44.    This tortious interference has resulted in substantial damages to AVG, including but not limited to lost profits and loss of good will.

45.    Defendant Green will likely continue this tortious interference unless this Court prohibits him from doing so.  AVG is without adequate remedy at law, and it threatened with

irreparable loss, injury and damage. AVG is entitled to actual and exemplary damages, and interlocutory and permanent injunctive relief against defendant Green.

## COUNT III
### (Breach of Confidentiality Agreement)

46.     Plaintiff AVG repeats and realleges the allegations of paragraphs 1 through 35 as if fully restated herein.

47.     Plaintiff AVG and defendant Green are parties to the Confidentiality Agreement.

48.     Defendant Green breached the Confidentiality Agreement by among other things offering audio visual services directly to, and not through AVG, actual or potential customers of AVG.

49.     Plaintiff AVG suffered damages from defendant Green's breach of the Confidentiality Agreement.

50.     Plaintiff AVG is entitled under the Confidentiality Agreement to obtain, in addition to any other legal remedies which may be available to it, such equitable relief as may be necessary to protect AVG against any breach or threatened breach.

## COUNT IV
### (Violation of the Virginia Uniform Trade Secrets Act, Va. Code Ann. §59.1-336 et seq.)

51.     Plaintiff AVG repeats and realleges the allegations of paragraphs 1 through 35 as if fully restated herein.

52.     Plaintiff AVG's sales processes, including its methods in preparing cost and price quotations to customers, and its specifications, business and marketing plans, financial cost structure and related information constitute trade secrets as such term is defined under the Virginia Uniform Trade Secrets Act, in that it derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper

means by other persons who can obtain economic value from their disclosure or use. AVG spent significant sums of money to create, safeguard and enhance the trade secrets. AVG used and uses efforts that are reasonable under the circumstances to maintain the secrecy of the trade secrets.

53.     Defendant Green willfully and maliciously misappropriated the trade secrets for his own benefit, without AVG's authorization, and without a right or privilege to do so to the detriment of plaintiff AVG.

54.     AVG's trade secrets were disclosed to defendant Green while in a confidential relationship with AVG. Defendant Green's use of said trade secrets is causing injury to AVG.

55.     Defendant Green is wrongfully using AVG's trade secrets and has converted and wrongfully appropriated for his own use such proprietary information and trade secrets.

56.     As a result of said conversion and misappropriation of trade secrets, AVG has suffered damages in an amount in excess of Seventy-five Thousand Dollars ($75,000).

57.     Unless defendant Green is restrained by this Court from continuing to misappropriate and use the trade secrets of AVG, plaintiff will suffer immediate, substantial and irreparable injury.

58.     The benefits to AVG in obtaining injunctive relief are equal to or outweigh the potential harm which defendant Green would incur if this Court grants the requested injunctive relief.

59.     The public interest is best served by granting the injunction.

## COUNT V
### (Violation of the Maryland Uniform Trade Secrets Act,
### Md. Code Ann. Com. Law §§ 11-1201, et seq.)

60.     Plaintiff AVG repeats and realleges the allegations of paragraphs 1 through 35 as if fully restated herein.

61.     AVG invested considerable time and money in developing its trade secrets and other privileged, proprietary and confidential information set forth herein.

62.     The information known to defendant Green constitutes valuable trade secrets as defined by the Maryland Uniform Trade Secrets Act, Md. Code Ann. Com. Law §§ 11-1201, et seq., and AVG has, along with other privileged, proprietary and confidential information, at all times maintained and continues to maintain such information as secret and confidential.

63.     The trade secrets and other privileged, proprietary and confidential information are valuable to AVG and provide a commercial advantage over competitors.

64.     The conduct of defendant Green set forth herein constitutes unlawful misappropriation and conversion of AVG's trade secrets and other privileged, proprietary and confidential information.  The conduct of defendant Green also constitutes willful and malicious misappropriation under Md. Code Ann. Com. Law § 11-1204, thus entitling Plaintiff to reasonable attorneys' fees.

65.     AVG has and will suffer monetary damages and loss of goodwill and diminution of value of its trade secrets and confidential and proprietary information.

66.     As a result of defendant Green's misappropriation and conversion of AVG's trade secrets and other privileged, proprietary and confidential information, AVG has suffered irreparable harm for which it has no adequate remedy at law.

1666570.3                                                                                                    87816.001

## COUNT VI
### (Conversion)

67.    Plaintiff AVG repeats and realleges the allegations of paragraphs 1 through 35 as if fully restated herein.

68.    At the time that defendant Green's employment with AVG was terminated, defendant Green was purportedly quoting, or in the process of quoting, approximately 29 projects to existing or potential customers of AVG.

69.    While defendant Green returned to AVG certain items, including his Company-provided laptop and certain file folders, only six folders relating to the in-process projects were returned to AVG.

70.    Upon information and belief, defendant Green has kept and not returned folders for approximately 23 of the 29 quoted projects.

71.    Upon information and belief, defendant Green has contacted at least one of the customers with in-process quotes after his employment with AVG was terminated.

72.    Such folders and the information contained therein constitute the property of AVG.

73.    Defendant Green's failure to return the folders has caused and will cause AVG to suffer damages and irreparable harm, including the loss of goodwill.

## COUNT VII
### (Accounting)

74.    Plaintiff AVG repeats and realleges the allegations of paragraphs 1 through 35 as if fully restated herein.

1666570.3                                                                      87816.001

75.    Defendant Green while employed by AVG as detailed herein provided services directly and indirectly through competitors to customers and potential customers of plaintiff AVG in breach of his duty of loyalty to AVG.

76.    During his employment with AVG, defendant Green had a confidential relationship with AVG and owes a duty to AVG to render an accounting with respect to: (a) the nature and amount of work that he performed for others while working for AVG, (b) the money he received as a result of providing such services to others, and (c) the amount of time spent by him in pursuit of his services to others during times at which he should have been devoting his full time and attention to the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Audio-Video Group, LLC prays for relief as follows:

(1) That the Court enter a temporary restraining order, preliminary and permanent injunction, requiring that defendant Christopher L. Green:

    a. Refrain from directly or indirectly engaging in, or offering to engage in, the business of offering audio visual services to any customer or former customer of Plaintiff;

    b. Return to Plaintiff any and all property of AVG, including but not limited to folders relating to in-process customer quotes at the time that his employment with AVG ceased, that he has in his possession, custody or control;

    c. Cease using his cellphone number in connection with the provision of audio visual services for himself or by him on behalf of others; and

    d. Permanently refrain from using or disclosing any confidential and/or proprietary information in violation of the provisions of the Confidentiality Agreement between Plaintiff and Defendant.

(2) That the Court award actual damages in an amount exceeding Two Hundred Sixty Thousand Dollars ($260,000.00) or such other amount to be proven at trial.

(3) That the Court award exemplary damages in an amount exceeding One Million Forty Thousand Dollars ($1,040,000) or four times actual damages proven at trial.

(4) That any monies unjustly gained as a result of the aforementioned violations be disgorged from defendant Christopher L. Green.

(5) That Audio-Video Group, LLC be awarded the expenses of this litigation, including reasonable attorneys' fees, costs and expenses.

(6) That defendant Christopher L. Green provide an accounting detailing (a) the nature and amount of work that he performed for others during his employment with defendant Audio-Video Group, LLC, (b) the money he received as a result of providing such services to others, and (c) the amount of time spent by him in pursuit of his services to others during times at which he should have been devoting his full time and attention to the defendant Audio-Video Group, LLC.

(7) That Audio-Video Group, LLC be awarded all such further relief as this Court deems just and proper.

Respectfully submitted,

LERCH, EARLY & BREWER, CHTD.

By: _____

Stuart A. Schwager, VSB #36204
LERCH, EARLY & BREWER, CHTD.
3 Bethesda Metro Center, Suite 460
Bethesda, MD  20814
(301) 347-1271
saschwager@lerchearly.com

Counsel for Audio-Video Group, LLC

Dated:  February 18, 2014

1666570.3                                                                         87816.001