IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| AUDIO-VIDEO GROUP, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | 1:14cv169 (JCC/TCB) |
| | ) | |
| CHRISTOPHER GREEN | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Plaintiff Audio-Video Group, LLC's ("AVG" or "Plaintiff") Emergency Motion for Temporary Restraining Order and Preliminary Injunction. [Dkts. 2, 3.] For the following reasons, the Court will grant in part and deny in part Plaintiff's Motion for a Temporary Restraining Order and will set a date for a hearing on Plaintiff's Motion for Preliminary Injunction.

**I. Background**

Plaintiff AVG is a Maryland company with its principal place of business in Frederick, Maryland. (Compl. [Dkt. 1] ¶ 1.) All of the membership interests in AVG are owned by Eric J. Johnson ("Johnson"), a citizen of Maryland. (Compl. ¶ 1.) AVG is an audiovisual systems integrator, which provides "audiovisual design and installation services, equipment rental

1

and purchase, training and seminars" among other services to customers in Maryland, Northern Virginia, Washington, D.C., Southern Pennsylvania and West Virginia. (Compl. ¶ 2.) Defendant Christopher Green ("Defendant" or "Green") was employed as a sales engineer at AVG from June 2006 until January 6, 2014. (Compl. ¶ 9.) In this capacity, Green sold to "prospective and actual buyers seeking audio and video solutions." (Compl. ¶ 9.) In his role at AVG, Green had access to non-public information regarding AVG's business models and customer base. (Compl. ¶ 12.)

At the time Green was first hired by AVG, he signed a Confidentiality Agreement, effective for a period of ten years after the date that AVG last disclosed confidential information to Green.[1] (Compl. ¶¶ 13, 16.) On January 6, 2014, AVG terminated Green. Shortly thereafter, AVG accessed Green's company laptop and found proposals and invoices for audio video services performed by Green for customers and potential customers of AVG. (Johnson Decl. [Dkt. 5] ¶ 25.) Thirty-four customers invoiced by Green were also customers to whom AVG had provided quotations or had actually provided audio video services. (Johnson Decl. ¶ 30.)

---

[1] The Confidentiality Agreement states: "Confidential Information shall include all data, materials, products, technology, computer programs, specifications, manuals, business plans, software, marketing plans, financial information, and other information disclosed or submitted, orally, in writing or by any other media, to Recipient by Owner. Confidential Information disclosed orally shall be identified as such within five (5) days of disclosure." (Confidentiality Agreement [Dkt. 1-1.] ¶ 1.)

Additionally, AVG alleges that at the time Green was terminated he was in the process of quoting 29 separate projects to existing or potential customers. (Johnson Decl. ¶ 33.) Green returned only six of the files related to those projects. (Johnson Decl. ¶ 33.) AVG alleges that Green is now employed as a Sales Engineer for AV/COM Integrators, a competitor of AVG.

On February 18, 2014, AVG brought suit against Green alleging: (1) breach of the duty of loyalty; (2) tortious interference with business relationships; (3) breach of contract stemming from the Confidentiality Agreement; (4) violation of the Virginia Uniform Trade Secrets Act; (5) violation of the Maryland Uniform Trade Secrets Act; (6) conversion; and (7) accounting. [Dkt. 1.]

Contemporaneously with the filing of its Complaint, AVG filed a motion pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, for a temporary restraining order ("TRO") and preliminary injunction that would: (1) prohibit Green from soliciting or providing audiovisual services to any customers or former customers of AVG; (2) order Green to return all property of AVG still in his possession; (3) enjoin Green from using his current cellphone number in connection with the provision of audiovisual services; (4) enjoin Green from disclosing confidential or proprietary information; and (5) direct Green to return to AVG the original and all copies of AVG's confidential

3

and proprietary information. (Mot. for TRO and Preliminary Injunction [Dkts. 2-3].) AVG's motions were accompanied by a brief in support, [Dkt. 4], and the declaration of AVG's founder and president, Johnson, [Dkt. 5]. Also on February 18, 2014, a summons was issued to Green.[2] [Dkt. 7.]

On February 24, 2014, Defendant filed his First Motion to Continue February 25, 2014 Hearing. [Dkt. 10.] That same day, Plaintiff filed an affidavit in support of its motion for preliminary injunction and temporary restraining order [Dkt. 12], and an opposition to Defendant's motion to continue, [Dkt 13.].

Plaintiff's motion for a TRO is now before the Court.

## II. Standard of Review

"The standard for granting either a TRO or a preliminary injunction is the same." *Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006) (citations omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res.*

---

[2] AVG originally filed its motion for a TRO without notice to Defendant pursuant to Federal Rule of Civil Procedure 65(b)(1) and submitted an Attorney Rule 65 Certificate setting forth the reasons why notice to Defendant should not be required. On February 18, 2014, Plaintiff served Defendant with the summons and a copy of the Complaint. On February 21, 2014, in accordance with instructions from chambers, Plaintiff served Defendant with the motion for a TRO and preliminary injunction. (Def.'s Mot. to Continue Hearing ¶ 4; Pl.'s Opp'n to Mot. to Continue Hearing ¶¶ 2-4.)

*Def. Counsel*, 555 U.S. 7, 20 (2008); *see also Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009) (citing *Winter*, 129 S. Ct. at 374), *vacated on other grounds*, 130 S. Ct. 2371 (2010), *reinstated in relevant part*, 607 F.3d 355 (4th Cir. 2010).

### III. Analysis

#### A. Jurisdiction

As an initial matter, this Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds $75,000.00. (Compl. ¶¶ 1, 4.)

#### B. TRO and Preliminary Injunction

##### 1. Likelihood of Success on the Merits

A plaintiff seeking a TRO must first establish that it is likely to succeed on the merits. Here, Plaintiff brings seven claims: (1) breach of duty of loyalty; (2) tortious interference with business relationship; (3) breach of confidentiality agreement; (4) violation of Virginia Uniform Trade Secrets Act; (5) violation of Maryland Uniform Trade Secrets Act; (6) conversion; and (7) accounting. Where multiple causes of action are alleged, Plaintiff need only show likelihood of success on one claim to justify injunctive relief. *McNeil-PPC v. Granutec, Inc.*, 919 F. Supp. 198, 201 (E.D.N.C. 1995) (citing *Nabisco Brands, Inc. v. Conusa Corp.*, 722 F. Supp.

5

1287, 1292 n.4 (M.D.N.C. 1989)), *aff'd*, 892 F.2d 74 (4th Cir. 1989).

However, "in cases where the request for preliminary relief encompasses both an injunction to maintain the status quo and to provide mandatory relief, as here, the two requests must be reviewed separately, with the request for mandatory relief being subjected to a more exacting standard of review." *Cornwell v. Sachs*, 99 F. Supp. 2d 695, 703 (E.D. Va. 2000) (emphasis omitted) (quoting *Tiffany v. Forbes Customer Boats, Inc.*, 959 F.2d 232, 1992 WL 67348, at *7 (4th Cir. Apr. 6, 1992) (unpublished table decision)).  In its motion, Plaintiff focuses on four of its seven claims: breach of the duty of loyalty, tortious interference with business relationships and violation of the Virginia or Maryland Uniform Trade Secrets Act.  The Court will begin with the breach of the duty of loyalty.

### a. Duty of Loyalty

Plaintiff's Count I alleges breach of the fiduciary duty of loyalty.  "The Supreme Court of Virginia has 'long recognized that under the common law an employee, including an employee-at-will, owes a fiduciary duty of loyalty to his employer during his employment.'" *Combined Ins. Co. v. Wiest*, 578 F. Supp. 2d. 822, 832 (W.D. Va. 2008) (quoting *Williams v. Dominion Tech. Partners, LLC*, 265 Va. 280 (2003)).  Despite the general right of employees to prepare to compete with their

employers, Virginia courts have found that "under certain circumstances, the exercise of that right may constitute a breach of fiduciary duty." *Feddeman & Co v. Langan Assocs.*, 260 Va. 35, 42 (2000). In *Feddeman,* the Supreme Court of Virginia noted, "liability for breach of fiduciary duty has been imposed when the employees or directors misappropriated trade secrets, misused confidential information and solicited an employer's clients or other employees prior to termination of employment." *Id.*

Here, it is likely that Plaintiff would succeed on the merits of this claim. Plaintiff has submitted evidence that during Green's employment with AVG, Green was competing with his employer. In his declaration Johnson relates that after Green was terminated, the company accessed Green's laptop and found numerous invoices for audio video services "performed directly by Green himself, or indirectly through competitors of AVG, to actual or potential customers of AVG." (Johnson Decl. ¶ 25; Johnson Decl. Ex. B.) These invoices date back to August 2006. (Johnson Decl. ¶ 26.) On the basis of these facts, Plaintiff is likely to succeed on the merits of its claim that Green breached his fiduciary duty of loyalty.

       b. <u>Tortious Interference with Business Relationship</u>

To prevail on a claim of tortious interference with a business relationship, a plaintiff must show: (1) the existence

7

of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the expectancy; (3) a reasonable certainty that absent the defendant's misconduct, the plaintiff would have realized the expectancy; and (4) damage to the plaintiff.  *Stone Castle Fin. Inc. v. Friedman, Billings, Ramsey & Co., Inc.,* 191 F. Supp. 2d 652, 660 (E.D. Va. 2002).  Moreover, in cases involving a business expectancy, "a plaintiff must also demonstrate that the defendant employed 'improper methods' in causing the alleged interference."  *E.I. Dupont de Nemours & Co. v. Kolon Indus. Inc.,* 688 F. Supp. 2d 443, 453 (E.D. Va. 2009).

Plaintiff is likewise likely to succeed on the merits of this claim.  The facts provided in Johnson's affidavit indicate that Green was a fulltime employee of AVG.  In this capacity, Green knew of AVG's business relationships with customers or potential customers.  (Pl.'s Mem. at 6.) Nevertheless, Green provided audio video services to customers or potential customers of AVG during his employment.  (Johnson Decl. ¶ 27.)  Specifically, Green personally invoiced thirty-four customers to whom AVG had provided quotations for service, or had actually provided audio video services.  (Johnson Decl. ¶ 30.)  Plaintiff is likely to be able to show that absent Green's activities, at least one of these customers or potential customer would have continued with AVG.  (Pl.'s Mem. at 6-7.)

### c. Misappropriation of Trade Secrets

Plaintiff has alleged violations of the Virginia Uniform Trade Secrets Act ("VUTSA") and the Maryland Uniform Trade Secrets Act ("MUTSA"). For present purposes the Court will not conduct a lengthy inquiry into which state's law applies, other than to note that the alleged misappropriation appears to have occurred in Virginia. Nevertheless, "the same analysis would apply under either Virginia or Maryland law as both states have adopted trade secret statutes which closely track the Uniform Trade Secrets Act." *Motor City Bagels, L.L.C. v. Am. Bagel Co.*, 50 F. Supp. 2d 460, 478 (D. Md. 1999).

To establish a claim under the VUTSA, a plaintiff must establish that (1) the information in question constitutes a trade secret and (2) the defendant misappropriated it. *Microstrategy v. Bus. Objects, S.A.*, 331 F. Supp. 2d 396, 416 (E.D. Va. 2004). The first question, then, is whether Plaintiff is likely to succeed on a showing that the information in question constitutes trade secrets. The VUTSA defines a "trade secret" as:

> information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that: [d]erives independent economic value, actual or potential from not being generally known to and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and [i]s the subject of efforts that

> are reasonable under the circumstances to maintain its secrecy.

Va. Code § 59.1-336.

"The case law is clear that just about anything can constitute a trade secret under the right set of facts." *MicroStrategy,* 331 F. Supp. 2d at 416. Nevertheless, an alleged trade secret must "meet all the criteria listed in the statute: (1) independent economic value; (2) not known or readily ascertainable by proper means; and (3) subject to reasonable efforts to maintain secrecy." *Trident Products and Servs., LLC v. Canadian Soiless Wholesale LTD,* 859 F. Supp. 2d 771, 778 (E.D. Va. 2012). Here, Plaintiff will likely be able to show that at least some of its confidential information, including "AVG's models and methods for pricing, its specifications, business means, marketing plans, [and] financial cost structure" constitutes trade secrets. (Johnson Decl. ¶¶ 13, 14.)

The Court therefore moves to the question of whether the Plaintiff is likely to succeed on the element of misappropriation. The VUTSA recognizes misappropriation under two circumstances: (1) improper acquisition of a trade secret or (2) disclosure or use of a trade secret. *See* Va. Code § 59.1-336. As is pertinent to this case, misappropriation of trade secrets consists of the disclosure or use of the trade secret of another by a person who, at the time of disclosure or use, "knew or had reason to know that his knowledge of the trade secret was

10

. . . [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." *Colello v. Geographic Servs., Inc.*, 283 Va. 56, 70-71 (2012) (quoting Va. Code Ann. § 59.1-336).

Plaintiff will likely be able to show that Defendant improperly used AVG's trade secret information, despite being under a duty to maintain its secrecy. Under the Confidentiality Agreement, Green had a duty to hold AVG's confidential information in confidence and not use such information other than for purposes of business with AVG. (Johnson Decl. ¶ 17; Confidentiality Agreement ¶ 2.) Nevertheless, AVG alleges that Green has used AVG's trade secret information in attempting to obtain "at least one of the customers with in-process quotes." (Johnson Decl. ¶ 34.)

### d. Conversion

Count VI of the Complaint alleges conversion. "In Virginia, a party bringing claims for conversion must allege facts that show any wrongful exercise or assumption of authority over another's goods, depriving him of their possession as well as any act of dominion wrongfully exerted over property in denial of the owner's rights." *Global Bankcard Servs. Inc. v. Global Merchant Servs., Inc.*, No. 1:11-cv-00110, 2011 WL 2268057, at *5 (E.D. Va. June 7, 2011) (citations omitted). On the basis of its conversion claim and the terms of the

Confidentiality Agreement, Plaintiff seeks a TRO directing Green to immediately return to AVG all confidential and proprietary information belonging to AVG. (Proposed TRO at 2.) The Confidentiality Agreement provides that "[u]pon request of Owner, Recipient shall return all Confidential Information received in written or tangible form, including copies, or reproductions or other media containing such Confidential Information, within ten (10) days of such request." (Confidentiality Agreement ¶ 2.B.)

The likelihood of success on the merits required for mandatory injunctive relief has been described as requiring a showing "clear and convincing on the part of the plaintiff." *Tiffany,* 1999 WL 67358, at *8 (quoting *Mycalex Corp. of Am. v. Pemco Corp.*, 159 F.2d 907, 912 (4th Cir. 1947)). Thus, "if there is doubt as to the probability of plaintiff's ultimate success, a request for preliminary mandatory relief must be denied." *Cornwell*, 99 F. Supp. 2d at 704 (internal quotation marks omitted). Based upon the evidence before the Court, including Johnson's declaration, AVG has made a clear and convincing showing that it is likely to succeed on the merits. AVG has put forth evidence showing that Green is wrongfully exercising dominion over the 23 in-process project files. This evidence stands unrebutted.

### 2. Irreparable Harm

The plaintiff must "make a clear showing that it is likely to be irreparably harmed absent preliminary relief." *Real Truth About Obama*, 575 F.3d at 347 (emphasis added). "[G]enerally irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate." *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994) (quoting *Danielson v. Local 275*, 479 F.2d 1033, 1037 (2d Cir. 1973)). "When the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied." *Id.* at 552. Irreparable harm must be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (quotation and citation omitted).

In the instant action, AVG contends that it will suffer irreparable harm because Green possesses confidential information relating to in-process projects. (Pl.'s Mem. at 8.) Johnson states that Green remains in possession of approximately 23 folders relating to "existing or potential customers of AVG." (Johnson Decl. ¶ 33.) Additionally, "upon information and belief, Green has contacted at least one of the customers with in-process quotes" after he was terminated from AVG. (Johnson

13

Decl. ¶ 34.) Based upon Green's alleged history of competing with AVG during his employment and Johnson's statement that Green has contracted at least one customer with an in-process quote, it is probable that AVG stands to lose customers to Green. Green's actions stand to irreparably harm AVG not because Green is competing with AVG, but because he seeks to use information generated by AVG to obtain AVG's existing or potential customers. *See Wachovia Servs., Inc. v. Hinds,* Civil No. WDQ-07-2114, 2007 WL 6624661, at *4 (D. Md. Aug. 30 2007). Accordingly, Plaintiff is warranted in seeking injunctive relief with regard to property of AVG still in Green's possession, and the use or disclosure of AVG's confidential and proprietary information.

### 3. Balance of Equities / Public Interest

Under the facts alleged the balance of equities tips heavily in favor of an injunction. If it is true that Green is contractually barred from using confidential information that he learned while in AVG's employ, then Green loses nothing by an injunction prohibiting from doing so. AVG, on the other hand, argues that if Green uses AVG's confidential information to reach out "to those in-process sales leads he was working on while at AVG with the information generated while he was employed at AVG, he may very well obtain the business of such customers." (Pl.'s Mem. at 8.) Moreover, "[p]ublic interest

14

favors the protection of confidential business information and the enforcement of valid contracts." *ABT, Inc. v. Juszcyk*, No. 5:09cv119, 2010 WL 3156542, at *9 (W.D.N.C. Aug. 10, 2010). Therefore, considering the legitimate interests at stake, the balance of equities and the public interest both warrant enjoining Green from using or disclosing confidential information in a manner that would violate the Confidentiality Agreement.

However, AVG's request that the Court prohibit Green from providing audiovisual services to customers or former customers of AVG is more relief than it is entitled to. In essence, Plaintiff seeks to enforce a non-solicitation agreement that does not exist. To the extent that Plaintiff seeks an injunction preventing Green from soliciting customers or potential customers of AVG without using confidential information, Plaintiff's motion is denied.

Likewise, Plaintiff's motion for a TRO preventing Green from using his cellphone in connection with the sale of audio video services is denied. Such relief would act to prevent Green from working in the audio video market, and would work an unwarranted and significant hardship on Defendant.

## IV.  Conclusion

For these reasons, the Court will grant in part and deny in part Plaintiff's Motion for a TRO and will set a date for a hearing on Plaintiff's Motion for a preliminary injunction.

An appropriate Order will issue.

|  | /s/ |
|---|---|
| February 26, 2014 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |